UNITED STATE DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff.**

                                                Criminal Action 2:18-cr-243
v.                                            **CHIEF JUDGE EDMUND A. SARGUS, JR.**

**JAIME CALDERO-CALDERON,**
***et al.,***

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Jaime Caldero-Calderon's ("Defendant Caldero-Calderon") Motion to Suppress (ECF No. 39) and the Government's Response in Opposition (ECF No. 42). The Court held a hearing on Defendant Caldero-Calderon's Motion on April 18, 2019. For the reasons that follow, Defendant Caldero-Calderon's Motion is **DENIED**. (ECF No. 39).

I.

At approximately 11:55 A.M. on October 26, 2018, Ohio State Highway Patrol Trooper Lindsey J. Barrett ("Trooper Barrett") and Ohio State Highway Patrol Sergeant Timothy Williamson ("Sergeant Williamson") were on traffic patrol duty on Interstate 70 in Madison County, Ohio.[1] Trooper Barrett and Sergeant Williamson observed a sedan with New York license plates traveling west-bound. In her testimony, Trooper Barrett stated she believed the

---

[1] The facts relied upon in this Opinion and Order were presented in open Court on April 18, 2019.

vehicle was traveling over the speed limit but did not check its speed. Sergeant Williamson also testified that, based on his police training and personal experience, he estimated the vehicle was traveling over the speed limit. Trooper Barrett and Sergeant Williamson also observed that the sedan was traveling approximately one and a half car lengths behind a white pick-up truck, in violation of Ohio Revised Code ("O.R.C.") § 4511.34. Trooper Barrett placed her cruiser in drive and began to follow the sedan. The cruiser's dashcam video captured the remainder of the factual scenario.

The video, which is of record in this case, began after Trooper Barrett drove the cruiser onto the highway and began pursuit. Both Troopers testified that Defendants' vehicle had only a one and a half car length distance from the white pick-up truck. As the cruiser pulled out in pursuit, Defendants' vehicle slowed down, opening a longer distance between the vehicles as seen on the video. As shown by the video, the sedan began to coast behind the truck—opening a gap of two to three car lengths between the vehicles. Sergeant Williamson testified that Trooper Barrett drove her cruiser along the left side of the sedan for several seconds. Both Trooper Barrett and Sergeant Williamson testified that, during those several seconds, they noticed the driver of the sedan exhibited unusual driving behavior by appearing fearful. Trooper Barrett then pulled behind the sedan and initiated a traffic stop. Defendant Caldero-Calderon, the driver of the sedan, engaged his brakes, signaled, and pulled over onto the right shoulder of the interstate.

Trooper Barrett briefly spoke with Defendant Caldero-Calderon before asking him to step out of the car and patting him down. During the conversation, Trooper Barrett ascertained that Defendant Caldero-Calderon had flown from Orlando, Florida to New York, New York. According to Defendant Caldero-Calderon, he and his passenger, Joel Jose Benitez-Echevarria

2

("Defendant Benitez-Echevarria"), had rented the sedan at JFK International Airport. Defendant Caldero-Calderon stated they were traveling to visit his cousin in Illinois. However, Sergeant Williamson testified that Defendant Benitez-Echevarria stated they were traveling to visit friends. Upon examination of Defendants' rental car agreement, Trooper Barrett discovered the sedan was due back at JFK International Airport on October 26, 2018 at 2:55 P.M.— approximately two hours from the time of the traffic stop. Both Sergeant Williamson and Trooper Barrett testified that Defendants appeared nervous.

Trooper Barrett testified that she suspected criminal activity due to Defendants' apprehensive demeanor and unusual travel itinerary. As evidenced by the dashcam video, Trooper Barrett deployed her on-site canine for a sniff of Defendants' sedan. The canine alerted near the trunk of the vehicle.[2] Trooper Barrett, Sergeant Williamson, and several other Troopers who had arrived on scene conducted a search of Defendants' trunk, discovering 37 kilograms of suspected heroin and cocaine. Defendants were arrested and interviewed by Drug Enforcement Administration ("DEA") agents. Defendants made incriminating statements during their interviews.

On November 15, 2018, Defendants were each indicted one count of Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i), and one count of Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). Both Defendants entered a plea of not guilty on November 20, 2018. On April 5, 2019, Defendant Caldero-Calderon moved to suppress all trial evidence seized by the Ohio

---

[2] The parties stipulated that the canine was properly trained and certified, and that the length of the stop, prior to the canine alert, was reasonable.

3

State Highway Patrol. (ECF No. 39). The Government filed a Response in Opposition on April 12, 2019. (ECF No. 42). Defendant Caldero-Calderon's Motion is ripe for review.

## II.

### A. Probable Cause to Stop Defendants

Defendant Caldero-Calderon contends Trooper Barrett lacked probable cause to make a traffic stop. (Mot. to Suppress at 4–5, ECF No. 39). Accordingly, he argues the traffic stop impinged on his Fourth Amendment right to be free from unreasonable searches and seizures. (*Id.* at 4). Defendant Caldero-Calderon further maintains that all evidence seized during the traffic stop should be excluded as fruit of the poisonous tree. (*Id.*) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–486 (1963)). This Court disagrees.

"Stopping a vehicle and detaining its occupants amounts to a seizure under the Fourth Amendment." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). To determine whether a stop is constitutionally reasonable, a court must determine (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). The Government bears the burden of proving the legality of a traffic stop. *United States v. Wells*, 690 F. App'x 338, 342 (6th Cir. 2017). A traffic stop is justified at its inception "when a police officer has reasonable suspicion of an ongoing crime or a completed felony or when he has probable cause to believe that a civil traffic violation has been committed." *Hoover v. Walsh*, 682 F.3d 481, 493 (6th Cir. 2012).

Reasonable suspicion is "more than an ill-defined hunch," it is "a particularized and objective basis for suspecting [a] particular person . . . of criminal activity." *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003) (quoting *Houston v. Clark Cty. Sheriff Deputy John Does 1–5*,

4

174 F.3d 809, 813 (6th Cir. 1999)). The probable cause standard is more demanding. *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016). An officer has probable cause when he has a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). To determine whether an officer had reasonable suspicion or probable cause to make a stop, the Court must examine the totality of the circumstances. *Collazo*, 818 F.3d at 257; *United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995). An officer's subjective motivation for stopping a vehicle, however, is irrelevant to the Court's Fourth Amendment analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Westmoreland*, 224 F. App'x 470, 474 (6th Cir. 2007).

Here, the Court applies the probable cause standard because "both parties' arguments hinge upon whether or not Defendant committed a traffic violation." *United States v. Huff*, 630 F. App'x 471, 495 (6th Cir. 2015). Defendant Caldero-Calderon asks the Court to disbelieve Trooper Barrett and Sergeant William's testimony that they observed Defendants' car traveling one and a half car lengths behind the pick-up truck. (Opp'n at 5). Specifically, Defendant Caldero-Calderon points out there appear to be several car lengths between his vehicle and the pick-up truck in Trooper Barrett's dashcam video. (*Id.*).

Defendant Caldero-Calderon further argues that, even if his vehicle was traveling one and a half car lengths behind the pick-up truck, Trooper Barrett lacked probable cause to believe Defendants violated O.R.C. § 4511.34(A). (*Id.*). According to Defendant Caldero-Calderon, the space between his vehicle and the pick-up truck was "reasonable and prudent" under the circumstances. (*Id.*). Defendant Caldero-Calderon avers: (1) it was daytime, (2) the weather was clear, (3) there was an ordinary amount of traffic, and (4) Defendants' vehicle was traveling at a reasonable speed. (*Id.*). Moreover, at oral argument, Defendant Caldero-Calderon challenged

5

Trooper Barrett and Sergeant Williamson's testimony that he displayed a fearful look. In Defendant Caldero-Calderon's view, facial expressions cannot establish probable cause for a traffic stop.

Finally, Defendant Caldero-Calderon argues that Trooper Barrett's traffic stop was pretextual. For instance, he asserts that "[w]hen unable to confirm her vague notion that Defendant [Caldero-Calderon] committed a speeding violation, Trooper Barrett instead claimed that he was following another vehicle too closely." (*Id.*). Furthermore, at oral argument Defendant Caldero-Calderon suggested his race, and Trooper Barrett's subsequent suspicions of illegal drug activity, played an impermissible role in her decision to effectuate the traffic stop.

The Sixth Circuit has acknowledged that cases challenging the constitutionality of searches and seizures "turn largely on credibility determinations made by the district judge at the suppression hearing." *United States v. Cooke*, 915 F.2d 250, 253 (6th Cir. 1990). As a result, district courts are afforded considerable deference when "factual findings rest in large part on credibility determinations." *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005) (citing *United States v. Navarro-Camacho*, 186 F.3d 701, 707 (6th Cir. 1999)).

The Court finds Defendant Caldero-Calderon's assessment of the evidence unpersuasive. Trooper Barrett and Sergeant Williamson testified that several moments after initially observing Defendants' vehicle, the sedan began to slow down and open a gap between itself and the pick-up truck. Sergeant Williamson further testified that dashcam videos are only electronically stored when the officer either: (1) activates the cruiser lights/sirens, or (2) triggers recording storage manually. According to Sergeant Williamson's testimony, stored dashcam videos only capture approximately 90 seconds of footage prior to the lights/sirens or manual activation. Thus, Trooper Barrett was already in pursuit of Defendants' vehicle at the start of the dashcam

video. Both Troopers testified that they first observed Defendants' vehicle close behind the white pick-up truck as they were parked in the median of the highway. The video does not start until the cruiser had pulled from the median and onto the highway. By this point, Trooper Barrett and Sergeant Williamson had seen Defendants' vehicle pass them and begin to slow down. Because Defendant Caldero-Calderon presented no evidence to rebut the witness testimony, the Court rejects his argument that Trooper Barrett did not observe his vehicle following the pick-up truck at one and a half car lengths.

Next, the Court considers whether Trooper Barrett and Sergeant Williamson's testimony amounts to probable cause that Defendants violated O.R.C. § 4511.34(A). The statute provides, in pertinent part:

> The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.

O.R.C. § 4511.34(A). As found by the Sixth Circuit in *United States v. Dukes*, 257 F. App'x 855, 858 (6th Cir. 2007), the test is not whether a driver "in her own estimation, believe[s] that, under the circumstances, she [is] providing enough room between herself and the [vehicle] in front of her." *Id.* Rather, the test is whether an officer, observing the driver and considering all external conditions, reasonably believes the driver could stop her vehicle in time to prevent a rear-end collision. *Id.* Accordingly, "[t]he law in Ohio is clear that the car-length rule [i.e., one car-length for every ten miles per hour of speed] is a workable indicator of a § 4511.34 violation." *Id.* The *Dukes* court held that a car traveling at 55 miles per hour within two car lengths of a semi was enough to establish probable cause of a § 4511.34(A) violation. *Id.*

An Ohio Court of Appeals reached a similar conclusion in *State v. Gonzalez*, 43 Ohio App. 3d 59, 62 (Ohio Ct. App. 1987). In *Gonzalez*, it was "undisputed that the condition of the

7

limited road access was very good, the weather was clear, appellant was not charged with excessive speed, and there was no testimony concerning any unusual road situation, disabled vehicle, or other hazardous situation." *Id.* at 61. However, the *Gonzalez* court pointed out that these factors—while perhaps relevant to a probable cause determination—are not dispositive. *Id.* at 62. Instead, the central consideration is "whether one [could] stop before causing a rear-end collision." *Id.* The factors to be weighed in assessing whether a driver could prevent a read-end collision include: "the person's speed, the distance at which he followed, and his reaction time." *Id.* (citing *State v. Bush*, 182 N. E. 3d 43, 46 (Ohio Ct. Com. Pl. 1962)). Thus, the Court held there was ample evidence of a § 4511.43(A) violation where the appellant was traveling at 55 miles per hour approximately 10–15 feet behind another vehicle. *Id.*

Turning to the case at bar, the Court finds that Trooper Barrett had sufficient probable cause to believe Defendant Caldero-Calderon had violated § 4511.43(A). Although Trooper Barrett did not use any radar or other method of calculation, her speed estimation is relevant to the probable cause determination. Despite clear weather and good road conditions, a driver with average reaction time could not reasonably prevent a rear-end collision when traveling one and a half car lengths behind another vehicle at roughly 70–75 miles per hour. Moreover, although Trooper Barrett and Sergeant Williamson's testimony that Defendant Caldero-Calderon looked afraid is not sufficient to establish probable cause for a traffic violation, it may be considered under the totality of the circumstances. In other words, Defendant Caldero-Calderon's apprehensive facial expression supports Trooper Barrett's "reasonable grounds for belief" that he had committed a traffic violation.

Finally, the Court rejects Defendant Caldero-Calderon's argument that Trooper Barrett's stop was pretext for a drug search. The Supreme Court has held that the constitutional

8

reasonableness of a traffic stop does not depend on the subjective motivation of the officer involved. *Whren v. United States*, 517 U.S. 806, 813 (1996). In *Whren*, police officers patrolling a "high drug area" observed a vehicle stop for an unusually long time at a stop sign before turning suddenly and speeding off without signaling. *Id.* at 808. A search of the vehicle produced two large bags of crack cocaine, which the defendant moved to exclude on the grounds that the stop was pretextual. *Id.* at 809. The Court concluded the officers' subjective intent when making the stop was irrelevant. *Id.* at 813. Because the officers had probable cause to believe the petitioners had violated traffic law, the stop was reasonable pursuant to the Fourth Amendment. *Id.* at 819.

The Court finds *Whren* analogous to the instant action. As discussed *supra*, two factors supported Trooper Barrett's reasonable belief that Defendant Caldero-Calderon had violated Ohio traffic law, including: (1) his vehicle's proximity to the pick-up truck, and (2) his estimated speed. Whether or not her stop was motivated by an alternative law enforcement purpose is beyond the Court's inquiry under *Whren*. Accordingly, the Court holds that Trooper Barrett had probable cause to stop Defendant Caldero-Calderon for a violation of § 4511.43(A). Defendant Caldero-Calderon's first argument in favor of suppression fails.

## B. Reasonable Suspicion to Extend the Traffic Stop

Defendant Caldero-Calderon also contends that his "detention in the absence of any effort to effectuate a traffic citation" violated his Fourth Amendment rights. (Opp'n at 5). In Defendant Caldero-Calderon's view, "Trooper Barrett quickly deviated from the mission of the stop," yet "lacked reasonable suspicion to detain him for an independent criminal [drug] investigation." (*Id.* at 7). Defendant Caldero-Calderon's arguments are not well taken.

9

"The scope of [a] detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Consequently, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405 (2005); *Royer*, 460 U.S. at 500). In *Rodriguez*, the Supreme Court reiterated its earlier holding that police may not extend a traffic stop to conduct a dog sniff, absent reasonable suspicion. *Rodriguez*, 135 S. Ct. at 1616.

However, the Court found that inquiries related to the stop—such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration"—do not require reasonable suspicion. *Id.* at 1615. In addition, "negligibly burdensome [safety] precautions," such as asking an individual to exit a car, are exempt from reasonable suspicion because "traffic stops are 'especially fraught with danger to police officers.'" *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).

Here, Defendant Caldero-Calderon stipulated at oral argument that Trooper Barrett's traffic stop was not unreasonably long.[3] Consequently, the Court finds Trooper Barrett did not detain Defendants for an undue length of time. However, Defendant Caldero-Calderon argues that Trooper Barrett quickly deviated from the mission of her traffic stop by removing Defendant from the vehicle, patting him down, and questioning him regarding his travel itinerary. (Opp'n at 7). In Defendant Caldero-Calderon's view, "[t]hese questions were wholly unrelated to any potential traffic citation." (*Id.*). Defendant Caldero-Calderon also asserts that Trooper Barrett

---

[3] Defendant Caldero-Calderon also stipulated that: (1) Trooper Barrett is a highly trained officer with experience in drug interdiction, (2) Trooper Barrett's canine is highly trained in drug interdiction tactics, and (3) the dog sniff did not cause undue delay because Trooper Barrett's canine was already on site.

10

"made no effort to prepare a traffic citation for [his] purported traffic violation," and instead deployed her canine for an unrelated drug investigation. (*Id.*).

The Government accurately notes that law enforcement officers may extend a seizure if something happens during the stop to prompt a "reasonable and articulable suspicion that criminal activity is afoot." *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)). Such was the case here. According to her testimony, Trooper Barrett initially questioned Defendant Caldero-Calderon about his itinerary for routine reasons related to the stop, i.e., to collect evidence of a sleepy, drugged, aggressive, or influenced driver. In addition, Trooper Barrett testified that she asked Defendant Caldero-Calderon to exit the vehicle so she could hear him more easily, which she described as a routine practice.

Trooper Barrett testified that she developed a reasonable suspicion that Defendants were engaged in illegal drug trafficking during the first few minutes of the stop. Specifically, Trooper Barrett testified that she began suspecting criminal activity when: (1) Defendant Caldero-Calderon could not provide her with a final destination in Illinois, (2) Defendant Caldero-Calderon stated he flew from Orlando to New York in order to visit friends in Illinois, (3) Defendants' rental agreement indicated the car was due back at JFK International Airport within two hours of the stop, and (4) Defendants appeared nervous. The Court finds these facts were sufficient to establish a "reasonable and articulable suspicion" of illegal drug activity.

Accordingly, Trooper Barrett had sufficient reasonable suspicion to extend the traffic stop by patting down Defendant Caldero-Calderon and deploying her canine to sniff Defendants' vehicle. Defendant Caldero-Calderon's second argument in favor of suppression fails.

11

## III.

For the reasons stated above, the Court **DENIES** Defendant Caldero-Calderon's Motion to Suppress all evidence collected in the traffic stop. (ECF No. 39).

**IT IS SO ORDERED.**

4-26-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE